```
 1
 2
 3
 4
 5
 6
 7
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| WILLIAM G. PRUDHOLM, | ) | No. ED CV 04-658-PJW |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION AND ORDER |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, Commissioner of the Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

I.

INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking reversal of the decision by Defendant Social Security Administration ("Agency") denying Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Alternatively, he asks the Court to remand the case to the Agency for further proceedings. For the reasons discussed below, the Agency's decision is REVERSED and the case is REMANDED for further proceedings.

## II.

## BACKGROUND

Plaintiff was born on March 19, 1967, and was 33 years-old at the time of the last administrative hearing. (AR 89, 417.) He has a high-school education and past relevant work as a wind-turbine technician, crane operator, pipe-layer, equipment operator, and mechanic's assistant. (*See* AR 99.)

Plaintiff filed protectively for SSI and DIB benefits on July 1, 1996. (AR 100.) In his application, Plaintiff alleged disability since September 9, 1993 because of back problems and an injury to his right foot. (*See* AR 95, 336.) Plaintiff's claims were denied initially and on reconsideration, and he timely requested a hearing before an administrative law judge ("ALJ"). (AR 70-80.)

Over the years, the ALJ held two hearings on Plaintiff's application. Although only the decision that followed the ultimate hearing is at issue in this case, the substance of both hearings and the evidence introduced at each is relevant because of the nature of Plaintiff's allegations. Accordingly, the Court will summarize the hearings in chronological order.

A.   <u>The May 13, 1998 Hearing</u>

The first hearing was held on May 13, 1998. (AR 24.) Plaintiff appeared with counsel and testified. (*See* AR 25, 27-53.) The ALJ also heard testimony from a medical expert (*see* AR 30, 53-54), and a vocational expert. (AR 59-64.)

Plaintiff testified that he stopped working on September 9, 1993, the day he was injured on the job. (AR 27.) He explained that, on that day, a 25-pound tool fell approximately 80 feet from the top of a

tower, landing on his right heel. (*See* AR 30.)  His income for the next several years consisted of long-term disability and worker's compensation insurance payments.  (AR 27-29.)

Since the accident, Plaintiff did "nothing" for recreation; indeed, he claimed to be unable to walk for longer than 10 minutes at a time and stated that sitting was painful.  (AR 42.)  Thus, besides keeping his doctor's appointments and occasionally driving the car,[1] Plaintiff did nothing after his injury but "lay on [his] side" all day, keeping his foot elevated.  (AR 30-31, 34, 46.)  Plaintiff stated that he could bathe himself and admitted having no problems with his hands or fingers, but claimed that his wife helped him get dressed.  (AR 34.)  Because Plaintiff's wife worked, their nine-year-old daughter helped care for their two other children, then aged four and two.  (AR 31.)

Plaintiff also described the legacy of his foot injury.  He testified that he had one unsuccessful surgery to repair his foot in early 1995, and underwent only conservative treatment thereafter.  (AR 45, 48.)  Plaintiff stated that his doctor had recommended another operation, but added: "I declined it."  (AR 47.)  In the wake of the surgery, Plaintiff claimed that he suffered a blood clot and stated that his right leg was permanently atrophied.[2]  (AR 45.)  Plaintiff used a cane to walk (and brought it with him to the hearing), explaining that his pain would make him "pay for it" whenever he tried

---

[1] Plaintiff admitted that he drove himself to the hearing from Yucca Valley, a 45-minute trip one-way.  (AR 43.)

[2] When the ALJ pointed out that the examining physician noted no atrophy, Plaintiff claimed that that physician never asked him to remove his trousers or his "moon boot," a brace he wore on his injured right foot.  (AR 46.)

3

walking without the cane.  (AR 41.)  He added that he wore a brace or "moon boot" for his injured heel, and estimated that he had replaced that boot four times since the injury.  (AR 46, 50-51.)

In addition, Plaintiff discussed his other limitations.  He claimed to have back pain, and saw a chiropractor for this pain, but he admitted that no doctor had ever ordered x-rays or an MRI of his back.  (AR 31-33, 50.)  He also claimed to have pain in both knees; again, no doctor had examined his knees.  (AR 36, 39.)  And although Plaintiff had been treated with medication for an ulcer in 1996, he claimed to experience lingering symptoms of that ulcer, and stated that his doctors were "watching" it, along with his blood pressure.  (AR 33-34.)  He added that, although he gets depressed, he had not sought any medical treatment for that condition.  (AR 56.)

Plaintiff's prescription medications consisted of the anti-inflammatory medications Darvon and Soma, along with Diazide, a blood-pressure medicine.  (AR 34.)  Plaintiff claimed that his medicines took "the edge off" his pain, but he added that they also made him feel "real drowsy" and "drug-impaired," and yet did not help him sleep through the pain.  (AR 34-35, 40-41, 43, 46.)  He stated that, because of his pain and the side-effects of his medications, he did not believe himself capable of even sedentary work, claiming that he had a "real difficult time sitting."  (AR 34-35.)

The ALJ also heard testimony from a medical expert.  (AR 30, 52-54.)  Based on his review of the record and his questioning of Plaintiff at the hearing, the medical expert opined that Plaintiff's limitations did not meet or equal a Listing, (AR 30), and further opined that his condition would permit him to do sedentary work.  (AR 53-54.)

Finally, a vocational expert testified. She stated that, if the ALJ were to find Plaintiff capable of only sedentary work, he would be unable to return to any of his previous jobs, and added that none of his skills would be transferrable to sedentary work. (AR 59.) The ALJ then posed the following hypothetical question to the vocational expert:

> [Assume] a high school graduate, 31 years old with the same kind of work experience that [Plaintiff] has had. With the following functional limitations and these are cumulative. And where they contradict each other I would like you to assume the more restrictive. He's restricted to work that involves no prolonged walking or standing [. . .]. He's limited to semi-sedentary work as that term is defined for Workers' Compensation purposes. And I'd like to read that definition into the record. Disability resulting in limitation to semi-sedentary work contemplates the individual can do work approximately one-half the time in a sitting position and approximately one-half the time in a standing or walking position with a minimum of demands of physical effort, whether standing, walking or sitting. [. . . .] [¶] He is impaired in his ability to lift or carry objects to ten pounds maximum and less than ten pounds frequently. He is able to stand and walk for a total of two hours during an eight hour work day for no longer than a half hour continuously. He is impaired in his ability to balance, secondary to a limitation of range of motion of the right ankle joint. So what we have is a functional capacity for sedentary work with a sit/stand option.

(*See* AR 60-61.)  The vocational expert opined that a person with these hypothetical limitations could perform the job of parking lot cashier, surveillance system monitor, and assembler, all jobs that existed in significant numbers in the local economy.  (AR 61-62.)  She added that Plaintiff's need to use a brace for his foot and a cane would not impair his ability to do these jobs, but stated that--if he needed to elevate his foot at various intervals throughout the day--this limitation would eliminate the job of parking lot cashier, but not the other jobs.  (AR 62-64.)  If, however, Plaintiff was unable to concentrate because of his pain, the vocational expert opined that he would be unable to perform any of these jobs.  (AR 62, 64.)

After stating that Plaintiff would be referred for another consultative examination, including x-rays on his back, the ALJ convened the hearing.  (AR 65-67.)  The record, which did not contain all of the notes from Plaintiff's treating physician and chiropractor, was held open.  (AR 66.)

On April 21, 1999, the ALJ issued her first decision.  (AR 13-21.)  She determined that, although Plaintiff's foot impairment was severe, it did not meet or equal a Listing.  (AR 15.)  After surveying the record, the ALJ concluded that Plaintiff could not return to any of his former work, but that he could perform a full range of sedentary work, and that he was not disabled at step five of the sequential process.  (AR 20-21.)

Plaintiff sought review of the ALJ's decision.  (AR 8.)  The Appeals Council denied review.  (AR 4-5.)  Plaintiff then filed suit in this Court.  On June 25, 2002, the parties stipulated to a remand of the matter for another hearing.  (AR 358-59.)  The stipulated remand provided, in pertinent part:

> The remand of this case to an [ALJ] will enable the ALJ:
>
> (1) to fully develop the record in this case by obtaining and analyzing the medical records from several health-care providers that the ALJ considered necessary, but which were not available to her at the time of her decision [. . .]; and
>
> (2) to reassess the medical evidence to determine if [Plaintiff] must keep his right leg elevated, as per the November 27, 1996 recommendation of orthopedic surgeon Thomas Donaldson, M.D. [. . .].
>
> After performing the latter analysis, the ALJ will specifically determine whether [Plaintiff] could do any occupations in the national economy that did not require employers' "reasonable accommodation" under the Americans with Disabilities Act ("ADA") [. . . .]. It may be appropriate for the ALJ to hold a supplemental hearing at which a vocational expert would specifically address the ADA issue.

(AR 359-60.)

B.   The September 10, 2003 Hearing

A second administrative hearing was held on September 10, 2003. (AR 417.) Once more, Plaintiff appeared with counsel and testified. (*See* AR 419, 424-47.) The ALJ also heard testimony from a medical expert (*see* AR 338, 419, 448-62) and a vocational expert. (AR 463-70.)

Plaintiff testified that he had not worked since his injury in 1993, and that he remained at home full-time, while his wife worked at

a supermarket during the evenings.  (AR 424, 436-37.)  He explained that three of his four children were born since his injury; before they became school-aged, Plaintiff's sister would babysit them while he remained elsewhere in the house, although he stated that he did supervise them when necessary.  (AR 426-28, 435.)  Most of Plaintiff's children became school-aged since the previous hearing, leaving Plaintiff home alone on weekdays.  (AR 425-26.)  Plaintiff testified that his mother lived with the family to help care for the youngest child, an infant.  (AR 436.)

Plaintiff stated that the condition of his foot had "stayed the same" over the decade since his injury; his back condition, however, gradually had "gotten worse" since 1996.  (AR 427, 433-34.)  He stated that even minimal walking or standing left him sore for a day or two thereafter, and added that he had experienced a "considerable amount" of swelling in his injured leg.  (AR 429, 446.)  He added that the 45-minute drive to the previous hearing had left him "extremely sore."  (AR 430.)  His physical activities were limited to going to the grocery store with his wife, but stated that his back pain limited what he could do.  (AR 438.)  Plaintiff also refuted one of the examining physicians' suggestion that he was malingering.  (*See* AR 439.)

As to Plaintiff's medication regimen, he testified that he continued to take the same medications he had identified at the previous hearing--*i.e.*, Darvon, Soma, and Diazide, as well as Vicodin occasionally for pain--and three different allergy medications.  (AR 427, 460-61.)  He added that the drowsiness he experienced from the Darvon and Soma required him to take hour-long naps three times daily,

every day. (AR 428.)  He stated that the pain kept him from sleeping through the night, but added that his medication allowed him to sleep "a couple hours at a time."  (AR 429.)

The ALJ next listened to the testimony of the medical expert. The medical expert observed that Plaintiff's limitations included the foot injury and degenerative disc disease in his lower back, but opined that these impairments did not meet or equal a Listing.  (AR 448, 450.)  He explained that, in his view, Plaintiff would be limited to light work, meaning that he could lift ten pounds occasionally and stand and walk for two hours out of an eight-hour workday.  (AR 449-50.)  Regarding Plaintiff's subjective complaints, he added that there was no objective evidence to support Plaintiff's claims of drowsiness from his medication, and noted that this side-effect could be controlled by changing the dose of his medications.  (AR 449.)  He added that, because there was no evidence of edema in Plaintiff's leg, he was not required to elevate it while seated.  (AR 458.)  Thus, he opined that another doctor's more restrictive assessment of Plaintiff's limitations was unsupported by the medical evidence and, evidently, based on Plaintiff's own description of his pain.  (AR 456-579.)

Last, the ALJ took the testimony of a vocational expert.  He stated that, if Plaintiff were unable to lift more than 20 pounds, stand more than four hours out of an eight-hour workday or use his right foot more than occasionally, and if he required a five-minute break every hour, he could not return to any of his prior work.  (AR 463-64.)  He added that Plaintiff's skills would not be transferrable to lighter work.  (AR 464.)  The ALJ then posed the following hypothetical question to this expert:

> [A]ssume a younger individual less than 40 years of age with a high school education, with the work history similar to that of [Plaintiff], [. . .] and this individual for the purpose of this question is able to perform the full range of sedentary work with the exception that he has to take off five minutes every hour, up to five minutes every 60 minutes to stretch or change position.

(AR 464-65.) The vocational expert testified that a person with these limitations could work without ADA accommodation as an order clerk, sedentary assembler, and cashier, and noted that--even eroding these positions to account for the sit/stand option and Plaintiff's need to shift his leg periodically--all of these positions exist in significant numbers in the local economy. (AR 465-66, 469-70.) He added, however, that if Plaintiff's testimony about requiring unscheduled breaks to lie down or his complaints of extreme drowsiness were found credible, he would be unable to perform any of these jobs. (AR 466.)

On February 3, 2004, the ALJ issued a second decision analyzing Plaintiff's claims under the Agency's five-step sequential evaluation process.[3] (AR 336-41.) At step one, the ALJ found that Plaintiff "had not engaged in substantial gainful activity since September 9, 1993, his asserted onset date and date of injury." (*See* AR 337.) At steps two and three, the ALJ found that Plaintiff had "severe musculoskeletal impairments," but determined that these combined impairments were not severe enough to meet or medically equal a

---

[3] The decision is date-stamped "February 3, 2003," apparently in error. (*See* AR 341.)

Listing.  (*See* AR 337.)  At step four, the ALJ assessed Plaintiff's residual functional capacity, finding that, although he could not return to his prior jobs, he remained capable of sedentary work.  (AR 337, 339.)  In light of this assessment, the ALJ accepted the vocational expert's opinion that Plaintiff could perform a range of sedentary jobs, including that of order clerk and cashier.  (*See* AR 339-40.)  Accordingly, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act at any time through the date of the decision.  (AR 340.)

Plaintiff did not seek Appeals Council review of the second decision.  Instead, he filed the instant complaint on June 2, 2004.

## III.

## STANDARD OF REVIEW

"Disability" under the applicable statute is defined as the inability to perform any substantial gainful activity because of "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  The Court may overturn the ALJ's decision that a claimant is not disabled only if the decision is not supported by substantial evidence or is based on legal error.  *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

Substantial evidence "'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).)  It is "more than a mere scintilla but less than a preponderance," *Tidwell v. Apfel*, 161 F.3d

599, 601 (9th Cir. 1998), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

"The Court must uphold the ALJ's conclusion even if the evidence in the record is susceptible to more than one rational interpretation." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Indeed, if the record evidence can reasonably support either affirming or reversing the Agency's decision, this Court must not substitute its judgment for that of the ALJ. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the ALJ committed error but the error was harmless, reversal is not required. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2003)(applying the harmless error standard).

IV.

DISCUSSION

A.   The ALJ's Adverse Credibility Finding

Plaintiff complains that the ALJ "completely ignore[d]" his subjective symptom testimony in assessing his residual functional capacity. (*See* Motion at 3.) After reviewing the decision, the Court concludes that the ALJ did not cite sufficient cause for rejecting Plaintiff's credibility and, therefore, reversal is necessary to permit the ALJ to correct this error.

"Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). An ALJ may reject a claimant's testimony as not credible by specifically identifying the incredible testimony and by identifying the evidence that undermines that testimony. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). As long as substantial evidence in the record supports the ALJ's credibility finding, this Court may not second-guess it. *See*

*Morgan*, 169 F.3d at 600.  The Court will not reverse an ALJ's credibility determination based on contradictory or ambiguous evidence.  *See Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

The Ninth Circuit recognizes that pain testimony is difficult to weigh because "pain is a highly idiosyncratic phenomenon, varying according to the pain threshold and stamina of the individual victim." *Howard v. Heckler*, 782 F.2d 1484, 1488 (9th Cir. 1986).  More expansively, the circuit has observed:

> Unlike most medical conditions capable of supporting a finding of disability, pain cannot be objectively verified or measured . . . .  [T]he very existence of pain is a completely subjective phenomenon.  So is the degree of pain: The amount of pain caused by a given physical impairment can vary greatly from individual to individual.

*Fair*, 885 F.2d at 601.

The inherent difficulty in evaluating another person's experience of subjective symptoms has led the Ninth Circuit to require that the ALJ undertake a two-step analysis when considering a claimant's symptom testimony.  First, the ALJ must examine the evidence to determine whether the claimant has met his burden of producing objective medical evidence of an impairment, *and* of showing that the impairment reasonably could be expected to produce a symptom.  *See Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996).  In Plaintiff's case, the ALJ did not acknowledge that Plaintiff's impairments could cause the pain or other symptoms alleged.  (*See* AR 338.)  Thus, the ALJ did not perform the first *Smolen* step.

Under *Smolen*, the second step requires the ALJ to assess the claimant's credibility as to the severity of his pain or other

subjective symptoms.  *See Smolen*, 80 F.3d at 1282.  At this step, Social Security Ruling 88-13 lists a number of factors the ALJ may consider:

> 1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain; 2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions); 3. Type, dosage, effectiveness, and adverse side-effects of any pain medication; 4. Treatment, other than medication, for relief of pain; 5. Functional restrictions; and 6. The claimant's daily activities.

*See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991)(*en banc*) (quoting SSR 88-13 (1988))(superceded by SSR 95-5p (1995)).  At the second *Smolen* step, the claimant must produce medical evidence of an underlying impairment reasonably likely to be the *cause* of his alleged symptom but is not required to submit medical findings to substantiate the *severity* of his symptoms.  *See Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992).

In Plaintiff's case, the ALJ did not take the second analytical step prescribed by *Smolen*.  Indeed, the ALJ's discussion of Plaintiff's credibility was limited to a single sentence: "[Plaintiff's] testimony at the hearing failed to credibly establish functional limitations greater than that found herein."  (AR 340.)  Nowhere did the ALJ explain *which* of Plaintiff's subjective symptom complaints she found to be not credible.  This was improper.  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834.  This is consistent with the principle that "a reviewing court should not be forced to speculate as

14

to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." *See Bunnell*, 947 F.2d at 346. Cursory credibility findings with similar wording have been found to be erroneous. *See*, *e.g.*, *Stewart v. Sullivan*, 881 F.2d 740, 743 (9th Cir. 1989)(holding that an ALJ's determination that "[t]he claimant's allegations of severe pain and physical limitations are credible only to the degree that these symptoms limit her to no more than sedentary work activity" was legal error because the ALJ did "not provid[e] any reasons for justifying his decision, let alone [make] specific and justifiable findings").

The Agency's contention that the ALJ's credibility findings were "dispersed throughout the decision" must be rejected. (*See* Cross-Motion at 4.) Although it is true that there is ample evidence in the record with which the ALJ *could* have justified her adverse credibility determination, some of which she mentioned in her general survey of the medical evidence, she did not explain how any of that evidence tied into her credibility finding. This was error. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990)(holding that, although the decision contained "a possible explanation why the ALJ discounted [the claimant's] pain testimony," the ALJ's "failure to link" his adverse credibility finding to the evidence required reversal). Because this Court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision," *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001), reversal is necessary here.

On remand, the ALJ must make specific credibility findings as to Plaintiff's subjective symptom complaints. For example, Plaintiff testified that he suffers from unremitting back pain. (*See* AR 36,

15

427, 429.)  The record reflects that Plaintiff suffers from degenerative disc disease, which--as the medical expert testified--could cause chronic back pain.  (AR 448.)  The ALJ noted that Plaintiff had undergone epidural injections for his back pain, but did not say whether she disbelieved his testimony that this pain was disabling.  (*See* AR 338.)  If the ALJ disbelieved this testimony, she was required to "specifically make findings" to that effect.  *See Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004)(citation and internal quotation marks omitted).  The ALJ was not entitled to reach her credibility finding by ignoring Petitioner's pain testimony.  *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

   Additionally, Plaintiff testified that he experiences overpowering drowsiness from the medicines he takes to alleviate his back pain.  (*See* AR 34-35, 40-41, 43, 46, 428-30.)  The medical expert conceded that the combination of prescription medications Plaintiff ingests could cause this symptom.  (*See* AR 449, 460.)  The ALJ may have based her adverse credibility determination in part upon the fact "the objective evidence did not support" Plaintiff's claims of drowsiness.  (AR 339.)  If so, this was improper.  A claimant's testimony about his side-effects, like any other subjective symptom testimony, may not be rejected "solely because the objective medical evidence does not support" it.  *See Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002).

   In sum, the ALJ must reassess Plaintiff's credibility.  If the ALJ remains convinced that Plaintiff is not credible, she must either point to evidence in the record that Plaintiff is malingering, or offer legitimate reasons supported by substantial evidence which support her finding.  Whatever those reasons may be, the ALJ may not

16

reject Plaintiff's subjective symptom complaints simply because the evidence of record does not support his characterization of their severity.

B.  Remand Is Appropriate

The determination whether to remand for further proceedings or for payment of benefits lies within the discretion of the Court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). In most circumstances in Social Security disability cases, remand is appropriate. *See Moisa*, 367 F.3d at 886-87. Remand may be productive where additional proceedings can remedy defects in the original administrative proceedings. *See Celaya v. Halter*, 332 F.3d 1177, 1184 (9th Cir. 2003)(ordering "remand to the ALJ for a proper step-four analysis").

In this case, and as explained above, the ALJ did not make clear credibility findings. Ordinarily, this omission would direct the Court to credit Plaintiff's testimony as true, and--if the evidence and his testimony established his disability--remand for the award of benefits. *See Reddick v. Chater*, 157 F.3d 715, 728 (9th Cir. 1998); *see also Lester*, 81 F.3d at 834. The Ninth Circuit is, however, "not convinced that the 'crediting as true' doctrine is mandatory," and instead has recognized that there is "flexibility" in the application of the doctrine. *See Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003)(citing other cases where the Ninth Circuit had remanded solely for credibility findings).

In the circumstances presented here, the Court concludes that remand, rather than award of benefits, is proper. On this point, the Court is persuaded by the Ninth Circuit's holding in *Gonzalez*. There, the ALJ made a general finding that the claimant's testimony was not

credible, and elsewhere in the decision recited evidence about the claimant's daily activities that would support that finding, but "did not specifically link the testimony about [the claimant's] daily activity to a conclusion that [his] excess pain testimony lacked credibility." *Gonzalez*, 914 F.2d at 1201.  After noting that the ALJ's credibility determination was *not* defensible if it were based on the fact that there was no medical evidence to support the claimant's testimony about the severity of his pain, *see id.*, the court explained why it would remand for further proceedings instead of directing the award of benefits:

> [T]he ALJ identified evidence that *may* have been the basis for his credibility finding.  Since we simply cannot tell if it was the basis, remand is the proper disposition.  We do not imply that the daily activity testimony necessarily would support a finding of no credibility; we leave the question open.

*See id.* at 1202 (emphasis in original).  In Plaintiff's case, as in *Gonzalez*, the record contains evidence that may have supported the ALJ's determination that Plaintiff's testimony was not entirely credible.[4]  Indeed, many of these bases were articulated in the ALJ's

---

[4] For example, the ALJ's observation that Plaintiff has exaggerated his symptoms during a consultative examination (*see* AR 339) arguably could have supplied a proper basis for her adverse credibility finding.  *See Thomas*, 278 F.3d at 959-960 (approving an ALJ's adverse credibility determination where he specifically found that the claimant tried "to impede accurate testing of her limitations" and was prone to engage in "histrionic exaggeration"); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (upholding adverse credibility finding where ALJ cited, among other things, a claimant's "tendency to exaggerate").  Also, had the ALJ found that the physicians' notations in the record did not support Plaintiff's claim of extreme drowsiness, this finding would appear to

first decision but, inexplicably, not reiterated in the second decision.[5]  (*See* AR 18-19.)  Pursuant to *Gonzalez*, the Court will "leave the question open," *id.*, and remand so that the ALJ can make specific credibility findings.

On remand, the ALJ must reassess Plaintiff's credibility using the two-step analysis set forth in *Smolen*.  The ALJ is reminded that she must identify with specificity what aspects of Plaintiff's subjective symptom testimony she finds not credible, if any, and tie her findings to the evidence.  *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  The ALJ may not reject the claimant's subjective complaints regarding the extent and severity of her symptoms merely because they cannot be supported by objective medical evidence.  *See Bunnell*, 947 F.2d at 343 (citation omitted); *see also* S.S.R. 96-7p (1996).  Rather, a claimant's testimony concerning the severity of her pain or other symptoms can only be rejected for specific, clear, and convincing reasons, unless the ALJ finds evidence of malingering.  *See Drouin*, 966 F.2d at 1258; *see also Lester*, 81 F.3d at 834 ("For the

---

support her adverse credibility determination on this issue.  *See Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).  Finally, the ALJ's initial skepticism about Plaintiff's motivation to return to work (AR 19) also may have supplied a proper basis for her adverse credibility determination: It is well-established that the ALJ may consider a claimant's "motivation to obtain social security benefits" as part of his overall credibility determination.  *See Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992).

[5]  Because the Appeals Council vacated the initial decision, (*see* AR 355), and because the ALJ herself recognized that the Appeals Council's order "erased" that first decision, (*see* AR 453), the Court cannot assume that the ALJ intended to incorporate by reference the credibility findings she made in the first decision into the second decision.  (*See* AR 337.)

ALJ to reject the claimant's complaints, [the ALJ] must provide specific, cogent reasons for the disbelief.")(internal quotation marks and citation omitted).

V.

CONCLUSION

For all the foregoing reasons, the Agency's decision is reversed and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

IT IS SO ORDERED.

DATED:    September   8   , 2005.

/s/
_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\PRUDHOLM, W 658\Memo Opinion.wpd